## THE THREE LIGHTS.

(District Court. W. D. Pennsylvania. May Term, 1880.)

TOWAGE—NEGLIGENCE—LOSS OF BARGE.

> The tow-boat Three Lights, having three barges in tow, on her way down the Monongahela river, and being unable to pass under the Smithfield-street bridge at Pittsburgh, on account of high water, tied the said barges to the pier of the Tenth-street bridge, left them there, and returned up the river to bring down other tows, such being the custom of the river. One of these barges afterwards, while so tied up, was sunk by a collision with the tow-boat Bob Connell. *Held*, that no want of reasonable diligence was shown on the part of the Three Lights, and that there are no grounds for holding the said tow-boat responsible for the loss of the barge.

In Admiralty.

*Barton & Son*, for libelant.

*D. T. Watson*, for respondent.

*Wm. M. Watson* and *Knox & Reed*, for C. R. Stuckslager, co-respondent.

ACHESON, J. On or about January 1, 1880, W. H. Moore, the owner of the tow-boat Three Lights, made a contract with the libelant to tow three barges loaded with coal from McKeesport to the libelant's landing at Cork's run; and, accordingly, the said tow-boat took said barges in charge, and proceeded with them down the Monongahela river. After passing through lock No. 1, it was found that the river was too high for the tow-boat to go under the Smithfield-street bridge, and for this reason the barges were left at a place called Horne's Landing, at the third pier from the north shore of the Tenth-street bridge. It satisfactorily appears that for many years Horne's Landing had been a recognized place for the moorage of loaded and empty coal boats and barges, and was habitually used for such purpose by many coal operators, including the libelant himself. It is also shown that it was a common thing for the libelant to leave his loaded coal boats and barges at Horne's Landing when the river was too high for tow-boats to get under the Smithfield-street bridge. It is in proof, also, that under such circumstances it was customary for tow-boats, after placing their loaded barges at some convenient landing or place of moorage, to return up-stream, and bring down through the locks other tows. This had been the common practice. At the time the Three Lights left the libelant's barges at Horne's, there were but two or three other pieces at the landing, and the whole number was small compared with what had often been moored there at that stage of water. According to the clear weight of the evidence the libelant's barges, on this occasion, were properly and securely placed and tied to insure safety. Having so left these barges at Horne's Landing, the Three Lights proceeded up stream to McKeesport, and took in charge and brought down for the libelant another tow, consisting of several pieces. But the river continuing

too high for the Three Lights to pass under the Smithfield-street bridge, she lay with this tow below the first dam, at or near the gas-works, and while she was there, so engaged, the disaster occurred out of which this suit arose.    On the afternoon of January 6, 1880, while the libelant's said barges lay at Horne's Landing, the steam-boat Bob Connell, having one barge in tow, in attempting to reach Canby's Landing, at the pier of the Tenth-street bridge, next to Horne's, and southwardly thereof, ran into one of the libelant's barges—being the lowest one of the fleet—and broke it loose.    The barge was carried by the current down the stream and against one, of the piers of the Pan Handle Railroad bridge, and, with its cargo of coal, was sunk and lost.

It is claimed that the Three Lights is responsible for the loss, and the purpose of this suit is to enforce such liability.    The libel alleges that the Three Lights left the barges at Horne's and went elsewhere, contrary to its duty in the premises, and "notwithstanding notice from the said libelant not to do so."    But the only evidence to sus-tain this latter averment is that of F. H. Anderson, who was the libel-ant's book-keeper at Pittsburgh, having the general oversight of his business there.    He testifies that he met the captain (McMeans) of the Three Lights on the street at Pittsburgh, and was informed by him that the barges were lying somewhere above the Smithfield-street bridge.    "I told him" (says Anderson) "he would have to stay with them until he could take them to the landing."    Now, if this can be construed into an order to the tow-boat not to go away from the barges, but to remain constantly with them, still, several things are to be said:    *First*, it is very doubtful whether such an order was within the scope of Anderson's agency; *second*, the contract of tow-age was made at McKeesport with John Serena, the libelant's agent there, and it was no part of the contract that in case the water was found to be too high to get under the Smithfield-street bridge the Three Lights was to remain with the tow; *third*, in leaving the barges at Horne's and returning up-stream for more tow the tow-boat acted in accordance with the custom of the trade and the usual course of business in such circumstances; *fourth*, the Three Lights went up-stream to attend to other business of the libelant.

But it is further urged against the Three Lights that the river had fallen, on the morning of January 5th, to 11 feet and 10 inches, so that she might then have passed under the bridge, and should have done so.    This fall in the river, however, it would seem, was of very brief duration, not lasting many hours; for, from the record of the pier marks, we find that on the morning of January 7th the stage of water was nearly 14 feet, which was too great for the-tow-boat.    Un-der all the circumstances, I cannot discern any want of reasonable diligence on the part of the Three Lights in not attempting to run the Smithfield-street bridge on the morning of January 5th.

Finally, the proximate and real cause of the loss in question was

the bad management of the Bob Connell. That boat had ample room in the river, and should have avoided the libelant's barges. It was broad daylight, and they were plainly visible. Under the proofs, the collision was altogether inexcusable. Save for the culpable negligence of the Bob Connell, no harm would have befallen the libelant's barge; and, upon the whole, I perceive no just ground for holding the Three Lights responsible.

Let a decree be drawn dismissing the libel, with costs.